# United States Tax Court

T.C. Memo. 2022-93

LAKEISHA DEGOURVILLE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 4369-16.                              Filed September 12, 2022.

————

Lakeisha Degourville, pro se.

*John T. Arthur* and *Ashley Y. Smith*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, *Judge*:  By notice of deficiency dated January 19, 2016, respondent determined a deficiency of $139,249 in petitioner's federal income tax for the 2012 taxable year (year in issue) and a civil fraud penalty under section 6663[1] of $100,022.

The issues to be decided are (1) whether certain proceeds remitted to petitioner's bank accounts are taxable income; (2) petitioner's filing status; (3) petitioner's claim to the Earned Income Tax Credit (EITC); (4) petitioner's deductions of business expenses on two Schedules C, Profit or Loss From Business; (5) imposition of the civil fraud penalty

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (I.R.C. or Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Monetary amounts are rounded to the nearest dollar.

[*2] under section 6663(a); and (6) imposition of the EITC 10-year ban on account of fraud under section 32(k)(1)(B)(i).

FINDINGS OF FACT

Some of the facts have been deemed admitted upon the lack of a timely response under Rule 90(c) or deemed stipulated under Rule 91(f) and are so found.[2] The deemed admissions, stipulated facts, and attached exhibits are incorporated into our findings by this reference. Petitioner resided in Georgia when she timely filed her Petition for redetermination with the Court.

Petitioner married Kenneth Degourville on October 15, 1999; they remain married and resided within the same household along with their three children until mid-2016. The couple never legally separated during that time.

I. *Background*

A. *Petitioner's Businesses and Prior Tax Experience*

Petitioner is a licensed cosmetologist and an experienced tax return preparer. During the year in issue she solely owned and operated a tax preparation company (TaxTime Services or TaxTime) and a hair salon (Xplosions Hair Design) and co-owned a restaurant with her husband. Petitioner and her husband maintained bank accounts at SunTrust Bank to manage cashflow from each of these businesses. TaxTime was recognized as one of the largest tax return preparation companies in Columbus, GA, had continuous operations from 2009 until 2014, and employed approximately 18 persons on average.

Before running her own businesses, petitioner worked as a tax return preparer for Expert Tax Services from 2007 to 2009. She also dedicated time to furthering her tax expertise by attending several courses and seminars in individual tax return preparation. Eventually

---

[2] On May 25, 2017, respondent filed a First Request for Admissions under Rule 90 which was later deemed admitted and incorporated into the record at trial on September 25, 2017. On July 6, 2017, respondent likewise filed a Rule 91(f) Motion with regard to proposed stipulated facts. On July 18, 2017, the Court issued an Order granting respondent's Rule 91(f) Motion and directing petitioner to file a response to the Motion by August 22, 2017. Petitioner failed to respond to respondent's Rule 91(f) Motion, and on August 31, 2017, the Court made absolute its July 18, 2017, Order. The facts set forth in the Proposed Stipulation of Facts were deemed stipulated, and the Exhibits were admitted for purposes of trial and opinion herein.

[*3] she accumulated enough knowledge to host her own tax return preparation courses, which she administered from 2011 to 2016.

B. *Assessment of the Due Diligence Penalty Under Section 6695(g)*

On July 28, 2014, respondent properly assessed against petitioner a Return Preparer EITC Due Diligence Penalty under section 6695(g) of $45,000 for the 2012 taxable year.

C. *Cash Purchases*

Petitioner used cash to purchase four properties in Georgia between 2012 and 2013. The general location and purchase price of each transaction are as follows: Amber Drive in Midland for $23,000; Beallwood Avenue in Columbus for $20,000; Maddox Drive in Hamilton for an unspecified amount; and Glenwood Road in Columbus for $52,000. In May 2013 petitioner's husband made a cash purchase of property on Irwin Way in Columbus for $42,000. Petitioner, together with her husband, made a cash purchase of a plot of land on Preservation Trail in Midland in November 2013 for $90,000, and subsequently paid $366,436 via personal and cashier's checks for the construction of a 3,727-square-foot home on the property. Additionally, between 2010 and 2013 petitioner made cash purchases of a 2006 Hummer, a 2009 Chevy C15, a 2012 Lexus, a 2013 Honda, a 2013 Audi, and a motorcycle.

D. *Conviction for State-Level Tax Evasion and Theft By Taking*

On June 10, 2016, the State of Georgia convicted petitioner of one count of state tax evasion (for failing to report income on her state individual income tax return) and one count of theft by taking (for improperly filing her TaxTime clients' state income tax returns). As part of her sentence, which included 15 years of probation and a $31,300 fine, the State of Georgia permanently barred petitioner from owning or operating any tax preparation company and preparing income tax returns at the state, local, or federal level for other persons.

Petitioner testified at her state criminal trial that TaxTime earned $552,865 in fees for the 2012 tax year and that $168,466 of these gross receipts was reported as profit on an amended 2012 state income tax return. She further testified that she brought in revenues of around

[*4] $150,000 from Xplosions Hair Design and incurred a substantial loss attributable to her restaurant business.

## II. *Petitioner's 2012 Tax Reporting*

Petitioner and her husband each filed their own Forms 1040, U.S. Individual Income Tax Return, for the 2012 taxable year electing the head of household filing status. Petitioner listed her address as the home she purchased on Beallwood Avenue. She later conceded that her mother lived there and that she in fact resided with her husband in the newly constructed home on Preservation Trail during 2012. Her husband listed his address as a home on Quail Creek Drive in Columbus, GA. Petitioner prepared her 2012 state income tax return using the information from her 2012 federal income tax return. After examining petitioner's federal return, respondent adjusted her filing status from head of household to married filing separately.

### A. *EITC*

Petitioner and her husband both separately claimed the EITC from 2007 to 2012 on their respective tax returns. Respondent disallowed petitioner's claim to the EITC for the year in issue.

### B. *Schedule C*

Petitioner attached two Schedules C to her 2012 federal income tax return. She reported gross receipts of $20,316 for Xplosions Hair Design and $15,811 for TaxTime, both offset by several business deductions. Among those deductions, respondent disallowed those for rent/lease expenses of $18,300 in regard to Xplosions Hair Design and commission expenses of $5,000 in regard to TaxTime. No records were produced to substantiate these expenses. Petitioner reported net profits of $980 for Xplosions Hair Design and $9,088 for TaxTime.

## III. *Respondent's Audit and Bank Deposits Analyses*

Respondent initiated an examination of petitioner's federal individual income tax return for the 2012 taxable year and requested that she produce complete and adequate records and accounts of her income-producing activities in that year. Petitioner failed to proffer any business records at that time. At trial petitioner claimed that she remained unable to produce any records of her income-producing activities because they were being held by Georgia state authorities as part of the state's criminal investigation.

**[\*5]**   In lieu of business records respondent conducted bank deposit analyses on seven separate SunTrust Bank accounts associated with petitioner and her husband to determine petitioner's 2012 adjusted gross income. Respondent's bank deposits analyses demonstrated that $1,054,255 was deposited into the couple's SunTrust Bank accounts in 2012. Respondent's initial analysis calculated unexplained deposits of $911,033. After accounting for gross revenues already reported, properly allowed business expenses, and computational adjustments,[3] respondent determined that petitioner had unreported gross receipts of $439,705.

Petitioner has assigned no error to respondent's bank deposit analyses. In addition, there is no evidence that petitioner received any gifts, inheritances, legacies, devices, nontaxable or excludable income, receipts, cash, or other assets during the year in issue.

OPINION

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In certain circumstances, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, section 7491(a)(1) shifts the burden of proof to the Commissioner. Rule 142(a)(2). The Commissioner also has the burden of proof in respect of any new matter pleaded in the answer. *See* Rule 142(a)(1).

Petitioner has not introduced credible evidence sufficient to shift the burden of proof to respondent as to any relevant issue in dispute here. Respondent raised the section 32(k) issue in an Amendment to Answer, however. Since the section 32(k) issue was not included in the notice of deficiency and requires the presentation of different evidence, viz, evidence of a final determination of prior fraud, respondent has introduced a new matter and bears the burden of proof. *See Achiro v. Commissioner*, 77 T.C. 881, 890 (1981); *Sanderling, Inc. v. Commissioner*, 66 T.C. 743, 757–58 (1976), *aff'd in part*, 571 F.2d 174 (3d Cir. 1978). Accordingly, petitioner bears the burden of proof as to

---

[3] Respondent indicates that the notice of deficiency asserts one-half of the unexplained taxable income against petitioner; the remaining half was asserted against petitioner's husband in his separately issued notice of deficiency.

**[\*6]** all factual issues with the exception of the dispute relating to section 32(k).

I.  *Unreported Income*

A.  *Presumption of Correctness*

Efficient and harmonious judicial administration requires us to follow the law of the Court of Appeals to which appeal of our decision directly lies. *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).  For cases appealable to the U.S. Court of Appeals for the Eleventh Circuit, as this case appears to be absent a stipulation to the contrary, *see* I.R.C. § 7482(b)(1)(A), (2), the Commissioner's determination of unreported income is entitled to a presumption of correctness only if the determination is supported by a minimal evidentiary foundation linking the taxpayer to an income-producing activity, *see Blohm v. Commissioner*, 994 F.2d 1542, 1549 (11th Cir. 1993), *aff'g*, T.C. Memo. 1991-636.  Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the presumption of correctness applies and the burden of production shifts to the taxpayer to rebut that presumption by establishing that the Commissioner's determination is arbitrary or erroneous.  *Id.*

Respondent has shown that petitioner directly operated both TaxTime Services and Xplosions Hair Design, and at minimum received distributions from the restaurant she co-owned with her husband.  As discussed below, these businesses were capable of producing the significant amounts deposited into petitioner and her husband's SunTrust Bank accounts during the year in issue.  Petitioner failed to produce evidence establishing that respondent's determinations concerning her bank deposits are arbitrary or erroneous.  Accordingly, we find that respondent laid the requisite minimal evidentiary foundation for the contested unreported income adjustments and that his determinations are entitled to a presumption of correctness.

B.  *Gross Income and Bank Deposits Analyses*

Gross income includes "all income from whatever source derived, including (but not limited to) . . . [g]ross income derived from business." I.R.C. § 61(a).  This definition is construed broadly and extends to all accessions to wealth, clearly realized, over which the taxpayer has complete control.  *See Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955).  A taxpayer must maintain books and records establishing the amount of his or her gross income.  I.R.C. § 6001.  If a

[*7] taxpayer fails to maintain and produce the required books and records, the Commissioner may determine the taxpayer's income by any method that clearly reflects income. *See* I.R.C. § 446(b); *Petzoldt v. Commissioner*, 92 T.C. 661, 693 (1989); Treas. Reg. § 1.446-1(b)(1). The Commissioner's reconstruction of income "need only be reasonable in light of all surrounding facts and circumstances." *Petzoldt*, 92 T.C. at 687.

The bank deposits method is a permissible method of reconstructing income. *See Clayton v. Commissioner*, 102 T.C. 632, 645 (1994); *see also Langille v. Commissioner*, T.C. Memo. 2010-49, *aff'd*, 447 F. App'x 130 (11th Cir. 2011). Bank deposits are considered prima facie evidence of a taxpayer's receipt of income. *Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). The Commissioner need not show the likely source of a deposit treated as income, but the Commissioner "must take into account any nontaxable source or deductible expense of which [he] has knowledge" in reconstructing income using the bank deposits method. *See Clayton*, 102 T.C. at 645–46. After the Commissioner reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the Commissioner's use of the bank deposits method is unfair or inaccurate. *See id.* at 645. The taxpayer may prove that the reconstruction is in error, in whole or in part, by proving that a deposit is not taxable. *Id.*

Respondent introduced credible evidence that petitioner failed to maintain, or to submit for examination, complete and adequate records of her income-producing activities for the 2012 taxable year. Petitioner was fully aware of her obligation to maintain such records as she held herself out to the public and qualified as an expert in tax return preparation. We therefore find that it was reasonable for respondent to reconstruct petitioner's income using the bank deposits method. Accordingly, petitioner bears the burden of proving that respondent's reconstruction is unfair, inaccurate, or in error by proving that a deposit is not taxable.

Respondent's bank deposits analyses determined that petitioner and her husband received taxable income in excess of $1 million, of which at least $800,000 went unreported on their collective tax returns for the year in issue. Respondent allocated the unreported income pro rata with respect to the couple's ownership interests in their mutually owned businesses after accounting for verifiable expenses. Ultimately, following respondent's accounting of gross revenues already reported, properly allowed business expenses, and computational adjustments,

[*8] respondent concluded that petitioner failed to report gross receipts of $439,705.

Respondent has shown that petitioner's business interests are a likely source of the deposits made into the couple's bank accounts. Petitioner herself illustrated the earnings potential of her business interests at her state criminal trial wherein she testified that TaxTime earned $552,865 in fees for the 2012 tax year, $168,466 of which was reported as profit in an amended 2012 state income tax return. Petitioner further testified at this trial that Xplosions Hair Design earned around $150,000 in revenues. The exception is the substantial loss attributed to her restaurant business, which her husband estimated during the same trial to be about $119,000. The testimony produced at her criminal trial supports the conclusion that petitioner's business interests likely produced the amounts deposited into her and her husband's bank accounts. Although petitioner has not conceded these amounts, she has assigned no error to respondent's bank deposits analyses.

Petitioner disputes respondent's determinations on the basis that (1) the $439,705 in unreported gross receipts was earned not only by her but also by other contractors who worked at TaxTime and (2) that respondent failed to take into account her restaurant loss of around $250,000. Petitioner contends the significant loss was funded by the revenue generated by her other businesses. Notwithstanding this claim, petitioner has presented no evidence proving either a deduction of fees paid to TaxTime contractors or the restaurant loss. Petitioner contends she is unable to present evidence because her business records were seized and remain held by Georgia state authorities in connection with her state criminal case; but petitioner also admits to failing to request the return of these records as of the date of trial in this case. In consideration of the foregoing, petitioner has failed to show the non-taxable nature of any bank deposits, or that respondent's reconstruction is unfair, inaccurate, or in error. Respondent's determination that petitioner had unreported taxable income of $439,705 during tax year 2012 is sustained in full.

## II.    *Head of Household Filing Status*

Section 1(b) provides a special tax rate for an individual who qualifies as a head of household. A taxpayer qualifies for head of household filing status if he or she (1) is not married at the close of the taxable year and (2) maintains as his or her home "a household which

[*9] constitutes for more than one-half of such taxable year the principal place of abode" of a son or daughter. I.R.C. § 2(b)(1)(A). A taxpayer who is married may nevertheless qualify as not married for head of household filing purposes if (1) the taxpayer files a separate tax return, (2) the household is, for more than one-half of the taxable year, the principal place of abode of the taxpayer's child for whom the taxpayer would be entitled to claim a dependency exemption, (3) the taxpayer "furnishes over one-half of the cost of maintaining such household during the taxable year," and (4) the taxpayer's spouse is not a member of the household during the last six months of the taxable year. I.R.C. § 7703(b).

Petitioner and her husband filed separate income tax returns for 2012, each electing head of household status and indicating that they lived in separate residences. Petitioner listed Beallwood Avenue as her home address while her husband listed his as Quail Creek Drive. However, petitioner conceded that both she and her husband physically resided within the same household on Preservation Trail for the entirety of the 2012 tax year and were not legally separated during that time. On the basis of that admission, petitioner failed to meet the fourth requirement of section 7703(b) and is therefore not entitled to elect head of household filing status for the 2012 tax year. Respondent's adjustment of petitioner's filing status from head of household to married filing separately is sustained.

III.  *EITC*

Section 32(a)(1) provides an earned income tax credit for certain "eligible individuals" against the individual's income tax liability. The credit is calculated as a percentage of the individual's earned income. I.R.C. § 32(a)(1). Section 32(d) provides, however, that a married individual within the meaning of section 7703 is eligible for the EITC only if a joint return is filed for the taxable year. Treas. Reg. § 1.32-2(b)(2). Section 7703(b) provides, in pertinent part, that a married person whose spouse did not live with him or her for the last six months of the taxable year is not considered to be married for federal income tax purposes. I.R.C. § 7703(b)(3).

As discussed above, petitioner is a married individual within the meaning of section 7703 and filed an income tax return separately from her husband for the 2012 tax year. In order to qualify for the EITC petitioner listed as her home address a residence that she concededly did not physically reside in. Because petitioner and her husband were

**[\*10]** married, not legally separated, and shared the same household during the year in issue, section 32(d) required them to file a joint return to properly qualify for the EITC. Moreover, it is highly unlikely petitioner would have qualified for the EITC even if she had filed jointly with her husband considering the couple's substantial unreported gross receipts and the income phaseout limitations described in section 32(a)(2). We therefore hold that petitioner is not entitled to the EITC for the year in issue.

IV. *Schedule C Business Expenses*

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Such expenses must be directly connected with or pertain to the taxpayer's trade or business. Treas. Reg. § 1.162-1(a).

A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. I.R.C. § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976); Treas. Reg. § 1.6001-1(a). When a taxpayer establishes that she paid or incurred a deductible expense but does not establish the amount of the expense, we may estimate the amount allowable under limited circumstances. *See Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). However, there must be sufficient evidence in the record to permit us to conclude that the taxpayer paid or incurred the deductible expense in at least the amount allowed. *See Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957).

Petitioner claimed deductions for rent/lease expenses of $18,300 and commission expenses of $5,000 for her two reported Schedule C businesses, Xplosions Hair Design and Taxtime Services, respectively. Respondent disallowed each of these deductions for lack of substantiation following petitioner's failure to produce requested documentation of her income-producing activities. Petitioner indicated at trial that she could not produce any evidence of her expenses because her business records were still held by Georgia state authorities. She did not consider requesting the documents from the state authorities because the state criminal case remained active. There is no evidence

**[\*11]** she attempted to secure copies from alternative sources. It follows that there is no documentation in the record to substantiate her claimed Schedule C business expenses, and we have no basis to make any estimates under the *Cohan* rule. Under the circumstances, petitioner has failed to meet her burden of proving that she incurred these expenses and that they were incurred for ordinary and necessary business purposes. Respondent's disallowance of these deductions is sustained.

V.    *Penalty*

Respondent determined that petitioner is liable for the section 6663 civil fraud penalty for the year in issue.[4]

A.    *Section 6751(b) Compliance*

We initially must determine whether respondent has satisfied the section 6751(b) procedural requirements for imposing the section 6663 civil fraud penalty. The Commissioner bears the burden of production with respect to an individual taxpayer's liability for any penalty, requiring the Commissioner to come forward with sufficient evidence indicating that the imposition of the penalty is appropriate. *See* I.R.C. § 7491(c); *Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001). As part of that burden, the Commissioner must produce evidence of compliance with the procedural requirements of section 6751(b)(1). *See Graev v. Commissioner* (*Graev III*), 149 T.C. 485, 492–93 (2017), *supplementing and overruling in part Graev v. Commissioner* (*Graev II*), 147 T.C. 460 (2016). Section 6751(b)(1) requires the initial determination of certain penalties to be "personally approved (in writing) by the immediate supervisor of the individual making such determination." *See Graev III*, 149 T.C. at 492–93; *see also Clay v. Commissioner*, 152 T.C. 223, 248 (2019) (quoting section 6751(b)(1)), *aff'd*, 990 F.3d 1296 (11th Cir. 2021).

Trial of this case was held and the record was closed before the issuance of our opinion in *Graev III*, which overruled in part our decision in *Graev II* and held that the Commissioner's burden of production under section 7491(c) includes showing supervisory approval as required by section 6751(b). In the light of the Court's decision in

---

[4] In the event that we do not uphold the section 6663 civil fraud penalty, respondent asks the Court to find petitioner liable for the section 6662 (a) and (b)(2) substantial understatement penalty. Because we find that petitioner is liable for the section 6663 civil fraud penalty and that the penalty applies to the entirety of her underpayment of tax, the section 6662 penalty is moot. *See* I.R.C. § 6662(b).

[*12] *Graev III*, respondent filed a motion to reopen the record to include a completed Civil Penalty Approval Form dated November 2, 2015, and signed before the issuance of the notice of deficiency on January 19, 2016, along with a declaration by the examining agent who recommended the penalty. Respondent's Civil Penalty Approval Form evinces supervisory approval from the group manager (with agreement from the revenue agent) for the section 6663 civil fraud penalty imposed "due to the egregious under-reporting of income by the taxpayers." We ordered petitioner to file a response to respondent's motion, but she neglected to do so.

The decision to reopen the record to admit additional evidence is within our broad discretion. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 331–32 (1971); *Butler v. Commissioner*, 114 T.C. 276, 286–87 (2000). We "will not grant a motion to reopen the record unless, among other requirements, the evidence relied on is not merely cumulative or impeaching, the evidence is material to the issues involved, and the evidence probably would change the outcome of the case." *Butler*, 114 T.C. at 287. We also balance the moving party's diligence against the possible prejudice to the nonmoving party. In particular we consider whether reopening the record after trial would prevent the nonmoving party from examining and questioning the evidence as it would have during the proceeding. *Estate of Freedman v. Commissioner*, T.C. Memo. 2007-61, 2007 WL 831802, at *12.

We agree with respondent that the Civil Penalty Approval Form is not cumulative, is material to the penalty issues in this case, and probably would change the outcome. *See Butler*, 114 T.C. at 287. Reopening the record here serves the interests of justice because the record was closed in this case before we issued *Graev III* and because petitioner never raised compliance with section 6751(b)(1) as an issue before the record was closed. This is the type of evidence we routinely admit at trial solely on the basis of declarations such as those proffered. For these reasons, we will grant respondent's motion to reopen the record and admit the Civil Penalty Approval Form into evidence. And, because the group manager approved the section 6663 civil fraud penalty for petitioner's 2012 tax year before respondent sent the notice of deficiency, which served as the first formal communication of the determination to assert a penalty for the year in issue, we find that respondent has satisfied his burden with respect to the procedural requirements of section 6751(b).

**[\*13]**   B.      *Section 6663 Civil Fraud Penalty*

Next, we will address whether petitioner is liable for the section 6663 civil fraud penalty for the year in issue. Section 6663(a) imposes a penalty equal to 75% of the taxpayer's underpayment of federal income tax that is due to fraud. Fraud is an intentional wrongdoing on the part of the taxpayer with the specific purpose of evading a tax believed to be owing. *Petzoldt*, 92 T.C. at 698; *Minchem Int'l, Inc. v. Commissioner*, T.C. Memo. 2015-56, at \*43, *aff'd sub nom. Sun v. Commissioner*, 880 F.3d 173 (5th Cir. 2018). If any portion of the underpayment is attributable to fraud, the entire underpayment will be treated as attributable to fraud unless the taxpayer establishes by a preponderance of the evidence that part of the underpayment is not due to fraud. I.R.C. § 6663(b).

Respondent has the burden of proving fraud by clear and convincing evidence. *See* I.R.C. § 7454(a); Rule 142(b). To carry that burden, respondent must show that (1) an underpayment of tax exists for the year in issue, and (2) some part of the underpayment is attributable to fraud. *See* I.R.C. §§ 6663(a), 7454(a); *DiLeo v. Commissioner*, 96 T.C. 858, 873 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992). Respondent has clearly and convincingly demonstrated that petitioner failed to report income derived from her three business interests during the year in issue and that her failure ultimately led to an underpayment of tax. The first element of the civil fraud penalty has therefore been established.

Turning to the second element, we must determine whether petitioner had the requisite fraudulent intent. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. *See DiLeo*, 96 T.C. at 874. Fraud is never presumed and must be established by independent evidence of fraudulent intent. *See Baumgardner v. Commissioner*, 251 F.2d 311, 322 (9th Cir. 1957), *aff'g* T.C. Memo. 1956-112. However, fraud may be shown by circumstantial evidence because direct evidence of a taxpayer's fraudulent intent is seldom available. *See Petzoldt*, 92 T.C. at 699; *Gajewski v. Commissioner*, 67 T.C. 181, 199–200 (1976), *aff'd without published opinion*, 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. *See Niedringhaus v. Commissioner*, 99 T.C. 202, 210 (1992).

The circumstantial evidence by which the Commissioner may prove fraud includes various "badges of fraud" on which courts often

[*14] rely. *See Bradford v. Commissioner*, 796 F.2d 303, 307 (9th Cir. 1986), *aff'g* T.C. Memo. 1984-601; *DiLeo*, 96 T.C. at 875. These badges focus on whether the taxpayer engaged in certain conduct that is indicative of fraudulent intent, such as: (1) understating income; (2) failing to maintain adequate records; (3) offering implausible or inconsistent explanations; (4) concealing income or assets; (5) failing to cooperate with tax authorities; (6) engaging in illegal activities; (7) providing incomplete or misleading information to the taxpayer's tax return preparer; (8) offering false or incredible testimony; (9) filing false documents, including filing false income tax returns; (10) failing to file tax returns; and (11) engaging in extensive dealings in cash. *See Bradford v. Commissioner*, 796 F.2d at 307–08; *Parks v. Commissioner*, 94 T.C. 654, 664–65 (1990); *Recklitis v. Commissioner*, 91 T.C. 874, 910 (1988); *Lipsitz v. Commissioner*, 21 T.C. 917 (1954), *aff'd*, 220 F.2d 871 (4th Cir. 1955). The existence of any one badge is not dispositive, but the existence of several badges is persuasive circumstantial evidence of fraud. *Niedringhaus*, 99 T.C. at 211. We may also consider a taxpayer's intelligence, education, and tax expertise in deciding whether the taxpayer acted with fraudulent intent. *Iley v. Commissioner*, 19 T.C. 631, 635 (1952).

Respondent has shown that several badges of fraud are evident in this case. Respondent's bank deposits analyses demonstrate that petitioner's substantially understating gross receipts from her businesses resulted in a substantial understatement of income on her 2012 federal income tax return. The analyses show that for tax year 2012 petitioner reported gross receipts of $36,127 when the bank deposits show the correct amount attributed to her was $439,705, more than ten times larger. As a consequence of her substantial understatement of income and her improper claim to the EITC, petitioner did not pay any tax for 2012 and instead received a refund of $2,886.

Petitioner engaged in more than one illegal activity during the year in issue. She was assessed the Return Preparer EITC Due Diligence Penalty under section 6695(g) for failing to comply with the due diligence requirements of the Code when determining her clients' eligibility to claim the earned income credit available under section 32.

**[\*15]** Section 6695(g) mandated a penalty of $500 for each such failure.[5] The fact that petitioner's penalty under section 6695(g) totaled $45,000 indicates that she improperly filed 90 tax returns on behalf of her clients. Moreover, petitioner was convicted by the State of Georgia in June 2016 of theft by taking, relating to the fraudulent preparation and filing of her clients' state income tax returns, and state income tax evasion, relating to fraudulently preparing and filing her own state income tax return, with respect to tax year 2012. We have previously held that although a criminal conviction involving state income tax violations does not by itself establish fraudulent intent, it does provide "evidence of a propensity to defraud." *See Hatling v. Commissioner*, T.C. Memo. 2012-293, at \*17 (quoting *Lee v. Commissioner*, T.C. Memo. 1995-597); *see also Petzoldt*, 92 T.C. at 701–02.

Fraudulent intent may be inferred when a taxpayer files a document intending to conceal, mislead, or prevent the collection of tax. *Durland v. Commissioner*, T.C. Memo. 2016-133, at \*79. Filing false documents with the IRS constitutes "an 'affirmative act' of misrepresentation sufficient to justify the fraud penalty." *Zell v. Commissioner*, 763 F.2d 1139, 1146 (10th Cir. 1985), *aff'g* T.C. Memo. 1984-152. Petitioner filed federal income tax returns for the year in issue knowingly omitting significant amounts of gross income. This act plainly exhibited an unquestionable intent to conceal, mislead, or prevent the collection of tax. We also find that respondent has demonstrated by clear and convincing evidence that petitioner intentionally falsified information on her 2012 tax return in order to fraudulently claim the EITC, for which she was ineligible. Petitioner deliberately listed as her home address an address at which she did not reside. Petitioner filed under head of household status when in fact she was married and resided with her husband. Taxpayers who are married and share the same household with their spouse must file a joint income tax return to properly qualify for the EITC. *See* I.R.C. § 32(d). Petitioner also significantly underreported her income. Even if petitioner had lived separately from her husband, her income would have negated eligibility for the EITC because of its income restrictions. *See* I.R.C. § 32(a)(2). These inaccuracies appear to have been made in a deliberate effort to fraudulently claim the EITC and avoid detection by tax authorities, and

---

[5] The prior version of section 6695(g) effective as of taxable year 2012 penalized tax preparers $500 for each failure to determine eligibility for the earned income credit. The statute has since been amended to include within its scope each failure by a tax preparer to determine (1) eligibility to file as a head of household on the return, or (2) eligibility for, or the amount of, the credit allowable by section 24, 25A(a)(1), or 32.

[*16] we so find. Petitioner's expertise in individual income tax preparation demonstrates that she particularly would have had the requisite knowledge of the threshold income eligibility and filing status requirements to qualify for the EITC.

Intent to evade tax may be inferred from the "concealment of assets or covering up sources of income." *Spies v. United States*, 317 U.S. 492, 499 (1943). Petitioner covered up sources of income by failing to produce adequate business records in response to the initial examination of her tax returns. She concealed assets through a multitude of cash purchases as outlined below.

Extensive dealing in cash to avoid scrutiny of a taxpayer's finances is a badge of fraud. *See Bradford v. Commissioner*, 796 F.2d at 307–08. In particular, when a taxpayer's dealings in cash are accompanied by attempts to conceal transactions, that course of conduct is probative evidence of fraud. *See Valbrun v. Commissioner*, T.C. Memo. 2004-242. Petitioner's cash dealings alone may be sufficient to be dispositive of her fraudulent intent. Petitioner and her husband purchased six properties in cash or cash equivalents throughout Muscogee County, GA. On one of those properties, the couple paid $366,436 in cash to fund the construction of a 3,727-square-foot home. In addition, petitioner made cash purchases of six vehicles between 2010 and 2013. She provided no explanations or records concerning any of these cash transactions. Accordingly, we find that petitioner engaged in cash transactions in an effort to conceal income and that her overall course of conduct is probative of fraud.

Petitioner appears to argue that her failure to report income was due to negligence, rather than fraud, by testifying that operating many businesses at once caused her to "lack attention to certain areas," and that neglect was responsible for the "mistake" of underreporting her income. While it may be true that 2012 was a busy year for her, petitioner's tax knowledge, training, and course instruction weigh heavily against her claim that underreporting significant amounts of gross income was a mistake. *See, e.g.*, *Becker v. Commissioner*, T.C. Memo. 2018-69, at *49. As an experienced, highly trained tax return preparer who held herself out to the public as such, petitioner was or should have been fully aware of her obligation to accurately report income and of the consequences of failing to do so. In general, operating a few businesses is not a reasonable defense to underreporting the income derived therefrom, nor is it a reasonable excuse considering one of those businesses was a tax preparation company. The evidence in this

**[\*17]** case supports the conclusion that petitioner knowingly attempted to evade her tax obligations and that her underpayment of tax was due to fraud. Petitioner has not raised any other argument nor shown that any amount should be excluded from the civil fraud penalty. Accordingly, the Court holds that she is liable for the section 6663 civil fraud penalty on the entirety of her underpayment of tax.

VI.  *EITC 10-Year Ban*

Respondent sought our "approval" to impose the EITC 10-year ban due to fraud under section 32(k)(1)(B)(i) in an Amendment to Answer. Section 32(k)(1)(A) establishes the general rule that "[n]o credit shall be allowed under this section for any taxable year in the disallowance period." Section 32(k)(1)(B)(i) defines the disallowance period, in relevant part here, as "the period of 10 taxable years after the most recent taxable year for which there was a final determination that the taxpayer's claim of credit under this section was due to fraud."

It is unclear what respondent means by approval to impose such a ban. Respondent contends in the Amendment to Answer that petitioner improperly claimed the EITC in "various preceding tax years" but neither alleges nor offers proof of a prior determination of fraud. Respondent does not identify nor allege the "most recent taxable year" for which there was a final determination that petitioner's claim to the EITC was due to fraud. Respondent does not clarify his view of the role played by the state conviction or any unidentified prior determinations by this Court. It follows that respondent has provided insufficient pleadings and supporting facts to permit the Court to determine compliance with section 32(k)(1) under a plain and ordinary reading of the statute. *See Klein v. Commissioner*, 45 T.C. 308, 311 (1965) ("Our rules require full—rather than incomplete, fragmentary, or vague—pleadings by the parties."). Furthermore, the Court has already decided above for the year in issue that petitioner is not eligible to claim the EITC pursuant to section 32(a)(1). Accordingly, we find that the issue is not properly before the Court and we decline to address it.[6]

---

[6] In his Simultaneous Opening Brief, respondent asks us for the first time to "uphold" imposition of the EITC 2-year ban due to negligence pursuant to section 32(k)(1)(B)(ii) in the event the Court does not "uphold" imposition of the EITC 10-year ban due to fraud. In addition to raising the issue too late, respondent's request for the 2-year ban fails for the same reasons as for the 10-year ban. The 2-year disallowance

**[\*18]** We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*

---

period is defined as "the period of 2 taxable years after the *most recent taxable year* for which there was a final determination that the taxpayer's claim of credit under this section was due to reckless or intentional disregard of rules and regulations (but not due to fraud)." *See id.* (emphasis added).